# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

**JOHN SMITH and SOYNIA SMITH**, as survivors and next of kin of **ADDISON SMITH**, deceased,

      Plaintiffs,

vs.

**CORECIVIC, INC., DAMON T. HININGER, GRADY PERRY, ELAINA RODELA, and JOHN DOE 1 through JOHN DOE 10,**

      Defendants

**Case No.**

**JURY DEMAND**

## ORIGINAL COMPLAINT

NOW COME John Smith and Soynia Smith, the Plaintiffs herein, stating and alleging as follows:

### Introduction

1. The Plaintiffs' 27-year-old son, Addison Smith, committed suicide while incarcerated in the South Central Correctional Center ("SCCC"), a private prison in Clifton, Tennessee operated by Defendant CoreCivic, Inc. Addison had a history of mental health problems and had threatened suicide multiple times prior to his death. As a result of those threats, CoreCivic guards placed Addison in an isolated cell. CoreCivic personnel failed to provide Addison with his psychiatric medication, however, and they filed to supervise him while he was in isolation. Addison hanged himself on August 23, 2019, while guards were not paying attention, and he could not be revived thereafter.

- 1 -

## Jurisdiction and Venue

2. This Court has jurisdiction under 28 U.S.C. § 1331 because the Plaintiff asserts federal claims under 42 U.S.C. § 1983.

3. Venue is proper in this Court because some of the Defendants reside or are located in the Middle District of Tennessee, and the acts giving rise to this lawsuit occurred in the Middle District of Tennessee.

## Parties

4. Plaintiff John Smith is the father of Addison Smith, an inmate who committed suicide at the South Central Correctional Center ("SCCC"), a private prison in Clifton, Tennessee. He asserts claims as his survivor and his next of kin.

5. Plaintiff Soynia Smith is the mother of Addison Smith. She asserts claims as his survivor and his next of kin.

6. Defendant CoreCivic, Inc. is a private prison company headquartered in Nashville, Tennessee.

7. Defendant Damon Hininger is the chief executive officer of CoreCivic, Inc.

8. Defendant Grady Perry is the warden of SCCC.

9. Defendant Elaina Rodela, MD of Chattanooga is the chief medical officer of SCCC.

10. Defendants John Doe 1-5 are guards who failed to supervise Addison Smith at the time he committed suicide.

11. Defendants John Doe 6-10 are CoreCivic medical and mental health employees who (1) failed to provide adequate treatment for Addison Smith's mental illness and (2) failed to insure that he took his prescribed medication.

## Facts

12.  Mr. Smith's death was part of a pattern. Prior to his death, CoreCivic paid millions in settlements around the United States because (1) it routinely understaffed its correctional facilities, inevitably resulting in anarchy, assault, murder, and suicide; and (2) it routinely failed to provide adequate medical care to inmates.  In 2016, the company and its directors were sued by company shareholders because, among other things, the company misrepresented its pattern of understaffing and poor medical care, which ultimately led the Federal Bureau of Prisons to cancel its business relationship with Core Civic. Notwithstanding these and numerous other warnings, CoreCivic continued to provide inadequate staffing, supervision and medical care at its facilities, including SCCF.

13.  Under the leadership of Defendant Heninger, CoreCivic has an established history of putting profits ahead of the health and safety of inmates. According to a 2011 lawsuit filed by the American Civil Liberties Union, for example, inmates referred to CoreCivic's Idaho Correctional Center as "Gladiator School" because the understaffing led to such a violent atmosphere at the prison. CoreCivic settled the lawsuit with the ACLU, agreeing to provide minimum staff levels, but the company was held in contempt of court in 2013 because it violated the agreement and falsified records to misrepresent the number of guards on duty.  In 2014, the FBI opened an investigation of the company based on its billing for "ghost employees," Idaho Governor Butch Otter ordered state officials to take control of the prison, and the company paid the state $1 million for understaffing the prison.

14. On or about February 23, 2017, a federal jury found that CoreCivic had violated inmates' Eighth Amendments rights to be free from cruel and unusual punishment by being deliberately indifferent to the serious risk posed by the company's long-standing practice of

- 3 -

understaffing the Idaho Correctional Center. The jury did not award damages, however, because it found that the inmates' particular injuries were caused by other factors.

15. At an Oklahoma prison operated by CoreCivic, ten prisoners were involved in a fight on February 25, 2015 that left five with stab wounds. The following month, eight more were involved in another stabbing incident. In June of that year, thirty-three gang members fought with weapons and eleven prisoners were sent to a hospital. On September 12, 2015, four inmates were killed during a riot at the same facility. Inmates alleged that gangs were effectively allowed to run the prison. According to an investigation by the Oklahoma Department of Corrections, video evidence of the September 12, 2015 incident from three cameras at the facility was recorded over or deleted by CoreCivic employees. Two guards were later indicted for bringing drugs and other contraband into the prison, including one of the guards accused of failing to act during the riot. Between 2012 and 2016, one-third of all homicides in Oklahoma prisons occurred at two CoreCivic facilities, though they held just over 10 percent of the state's prison population.

16. In August of 2016, the Office of the Inspector General ("OIG") of the U.S. Department of Justice found widespread deficiencies in staffing and medical care at facilities operated for the federal Bureau of Prisons by private contractors, including those operated by CoreCivic. As a result, the Department of Justice indicated that it would phase out its relationships with private prisons. That, in turn, led to the shareholder lawsuit described above. In a separate report released on April 25, 2017, OIG found widespread understaffing at a detention facility in Leavenworth, Kansas operated by CoreCivic for the U.S. Marshals Service, with vacancy levels reaching as high as 23 percent between 2014 and 2015. Earlier, the company tried to hide the fact that it was packing three inmates into two-inmate cells at

- 4 -

Leavenworth, contrary to prison regulations. The following excerpt appears in the April 25, 2017 OIG report:

> In 2011, without the knowledge of the [U.S. Marshals Service], the [Leavenworth Detention Center or "LDC"] took steps to conceal its practice of triple bunking detainees. LDC staff uninstalled the third beds bolted to the floor of several cells designed for two detainees and removed the beds from the facility in advance of a 2011 American Correctional Association (ACA) accreditation audit. A subsequent CoreCivic internal investigation revealed that this may have also occurred during other ACA audits of the LDC.

The Plaintiffs restate the foregoing allegations as their own.

17.  In May of 2012, a riot at a federal prison operated by CoreCivic in Natchez, Mississippi resulted in the death of a guard and injuries to approximately 20 inmates and prison staff.  OIG investigated and alleged the following in a report released in December of 2016:

> The riot, according to a Federal Bureau of Investigation (FBI) affidavit, was a consequence of what inmates perceived to be inadequate medical care, substandard food, and disrespectful staff members. A BOP after-action report found deficiencies in staffing levels, staff experience, communication between staff and inmates, and CoreCivic's intelligence systems. The report specifically cited the lack of Spanish-speaking staff and staff inexperience.

> Four years after the riot, we were deeply concerned to find that the facility was plagued by the same significant deficiencies in correctional and health services and Spanish-speaking staffing. In 19 of the 38 months following the riot, we found CoreCivic staffed correctional services at an even lower level than at the time of the riot in terms of actual post coverage. Yet CoreCivic's monthly reports to the BOP, which were based on simple headcounts, showed that correctional staffing levels had improved in 36 of those 38 months.

The Plaintiffs adopt the foregoing allegations as their own.

18.  A state audit released in 2017 found that Whiteville Correctional Facility (operated by CoreCivic) needed 79 officers to cover 17 positions during a shift, but on average the facility provided only 57 officers per shift. The same audit found systemic problems at Hardeman County Correctional Center ("HCCC") and Trousdale-Turner Correctional Center (both operated by CoreCivic), including understaffing and gang violence. The audit further noted that

- 5 -

information provided by CoreCivic concerning Trousdale-Turner and HCCC was so incomplete that it was not possible to determine the accuracy of staffing levels. The Plaintiff alleges that CoreCivic deliberately provided incomplete information in order to disguise the fact that it was understaffing both facilities.

19. On December 12, 2017, a former guard at Trousdale-Turner testified before a legislative committee that she resigned from the company in September after witnessing two inmates die from medical neglect during the seven months that she worked for the company. Ashley Dixon told lawmakers that in one instance she pleaded with her superiors for three days to help a dying inmate, but to no avail, and her subsequent complaints were ignored by company officials.

20. The Plaintiffs allege that suicides in CoreCivic facilities are the result of deliberate indifference, particularly because of its policy and practice of understaffing its facilities and failing to provide adequate medical care. On August 30, 2016, inmate Thomas Shane Miles was allowed to hang himself in an Indiana jail operated by CoreCivic despite two suicide attempts in the previous four days. On May 3, 2017, immigration detainee Jean Jimenez-Joseph was able to hang himself at a Georgia facility operated by CoreCivic, despite the fact that he was supposed to be on suicide watch. At the same facility less than two years later, another immigrant on suicide watch, Efrain De La Rosa, was nonetheless able to hang himself. In 2018, the family of Jose de Jesus Deniz-Sahagun filed suit against CoreCivic because he was allowed to kill himself at Eloy Detention Center, an immigrant detention facility operated by CoreCivic. According to a February 24, 2018 story in the *Pinal Central* newspaper,

> His was the fifth suicide reported at the Eloy facility since the mid-2000s, a high number compared to other detention centers across the country.
>
> The detainees who preceded Deniz-Sahagun hanged themselves with bed sheets or

shoelaces.

An analysis by National Public Radio in 2016 determined that the prison had the highest number of deaths in the country. The *Arizona Republic* made the same determination in 2015.

On December 6, 2018, Ross Hamilton Anderson was found hanging in his cell at Trousdale-Turner.

21. The Plaintiffs allege that the foregoing incidents actually understate the problem. A scathing audit released by the Tennessee Comptroller on January 10, 2020 found that CoreCivic had not properly recorded information about accidents, illnesses, and traumatic injuries at two of its facilities in Tennessee. Likewise, nurses at two CoreCivic facilities failed to monitor inmates to insure they were taking their medications, increasing the likelihood that mentally-ill and suicidal inmates would skip their medications. The same audit found that Whiteville Correctional Facility, which is operated by CoreCivic, was missing nearly one-third of its medical and mental health personnel during two different audit periods, and that homicides were two times more likely in CoreCivic facilities than in state-operated facilities.

22. The foregoing incidents – and others like them – demonstrate that CoreCivic, its wardens, its senior officers, and its directors adopted and enforced a corporate policy of deliberate indifference to inmate health and safety, specifically illustrated by understaffed prison facilities and inadequate medical care for inmates, all for the purpose of increasing the company's profits, and notwithstanding the fact that such practices consistently led to riots, assaults, suicides, murder, and mayhem. The suicide of Addison Smith was a predictable consequence of this corporate policy.

23. The directors and senior officers of CoreCivic knew that understaffing, medical neglect, and inadequate training were rampant at the company's facilities, and they did not make

- 7 -

reasonable efforts to change corporate policies, supervise offending employees, or counteract the threats to inmate safety.

24. Defendants John Doe 1-5 failed to monitor Addison Smith even though they knew that he was suicidal, and despite the fact that they were required to do so by law. Because Defendants John Doe 1 and 2 had not been checking Addison's cell as often as required on August 23, 2019, Addison already was in considerable danger. At some point, he managed to put a sheet or towel over the window into his cell. In a video recording from the date of Addison's death, John Doe Defendants 1 and 2 can be seen asking for permission to enter Addison's cell, but supervisory Defendants John Doe 3 and 4 inexplicably denied them permission to enter the cell, thus giving Addison additional time to hang himself. Defendant Grady Perry failed to supervise Defendants John Doe 1-5, failed to insure adequate monitoring of Addison Smith, and failed to insure adequate staffing at SCCC.

25. Defendants John Doe 5-10 failed to provide adequate mental health care to Addison Smith and failed to provide him with his medication. Defendant Rodela failed to provide adequate medical care for Addison Smith and failed to supervise Defendants John Doe 5-10. Defendants John Doe 5-10 and Defendant Rodela were deliberately indifferent to the serious medical needs of Addison Smith.

### Claims

**Count 1: Civil Rights Violations**

26. All prior paragraphs are incorporated herein by reference.

27. The Plaintiffs bring claims against all Defendants under 42 U.S.C. §1983 because they violated Addison Smith's Eighth Amendment right to be free from cruel and unusual punishment. Specifically, they failed to protect him from self-harm and failed to provide

- 8 -

adequate treatment for his mental illness.

**Count 2: Wrongful death**

28. All prior paragraphs are incorporated herein by reference.

29. The Plaintiffs bring claims of wrongful death against all of the Defendants.

**Count 3: Medical malpractice**

30. All prior paragraphs are incorporated herein by reference.

31. The Plaintiffs bring claims of wrongful death against all of the Defendants.

**Count 4: Gross Negligence**

32. All prior paragraphs are incorporated herein by reference.

33. The Plaintiffs bring claims against all of the Defendants for gross negligence leading to the death of Addison Smith.

**Count 5: Negligence**

34. All prior paragraphs are incorporated herein by reference.

35. The Plaintiffs bring claims against all of the Defendants for negligence leading to the death of Addison Smith.

<u>**Request for Relief**</u>

The Plaintiffs respectfully pray that upon a final hearing of this case, judgment be entered for them against the Defendants, for actual and punitive damages together with pre-judgment interest at the maximum rate allowed by law; post-judgment interest at the legal rate; costs of court; attorney fees; and such other and further relief to which the Plaintiffs may be entitled at law or in equity.

**THE PLAINTIFFS DEMAND A JURY TRIAL.**

Respectfully submitted,

<u>**s/Janet H. Goode**</u>
Janet H. Goode
Tennessee BPR No. 035872
917 S. Cooper Street
Memphis, Tennessee 38104
(901) 308-7511
(901) 641-3972 (fax)
*janet@janetgoodelaw.com*

<u>**s/ Ty Clevenger**</u>
Ty Clevenger
Texas Bar No. 24034380
P.O. Box 20753
Brooklyn, New York 11202-0753
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

**Attorneys for Plaintiffs**

- 10 -