# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

JOHN SMITH and SOYNIA SMITH,　）
as survivors and next of kin of　）
ADDISON SMITH, deceased,　）
　）
　　Plaintiffs,　）
　）
v.　）　　**Case No. 3:20-cv-00563**
　）　　**Judge Aleta A. Trauger**
CORECIVIC, INC., DAMON T.　）
HININGER, GRADY PERRY, EDDIE　）
JOHNSON, JASON WHITEHEAD,　）
ASHLEY ACKERMAN,　）
CHRISTOPHE[R] WILLIAMS,　）
LOGAN KING, JOSHUA RAY,　）
JENNY RATLIFF, LEDIA ALVA,　）
WILLIAM LYONS, J. SCOTT LONG,　）
MARK SIGLER, ELAINE　）
BLOODGOOD, ANDREA　）
STEADMAN, KEVIN TURNER, and　）
MARCAYUS ROSE,　）
　）
　　Defendants.　）

## MEMORANDUM

Before the court is the Amended Motion for Reconsideration of the Dismissal of Plaintiffs'

Medical Malpractice Claims (Doc. No. 93), filed by plaintiffs John Smith and Soynia Smith, as

survivors and next of kin of Addison Smith, deceased. For the reasons set forth herein, the motion

will be granted with respect to the dismissal of the medical malpractice claims against defendants

J. Scott Long, Mark Sigler, Elena Bloodgood-Grandy,[1] Andrea Steadman, Kevin Turner, and

---

[1] This defendant was incorrectly named in the Complaint as Elaine Bloodgood. Although the defendants provided notice that the plaintiffs incorrectly identified this defendant, the plaintiffs continue to refer to her as Elaine Bloodgood.

CoreCivic, Inc. The motion will be denied as to defendant William Lyons, but without prejudice to the plaintiffs' ability to move to amend their pleading to assert a medical malpractice claim and/or negligence claim against Lyons.

## I. BACKGROUND

The plaintiffs filed this lawsuit in June 2020 following the death of their son Addison Smith, who committed suicide while incarcerated at a facility operated by defendant CoreCivic, Inc. ("CoreCivic"), under a contract with the Tennessee Department of Correction ("TDOC"). Among other claims, the plaintiffs asserted a claim under Tennessee law for medical malpractice against nearly all of the defendants.[2] The defendants filed multiple motions for partial dismissal and, in June 2021, the court granted in part and denied in part the motions filed by, or joined by, defendants CoreCivic, Damon T. Hininger, Grady Perry, Ashley Ackerman, William Lyons, Eddie Johnson, Jason Whitehead, Christopher Williams, Ledia Avila (incorrectly named in the Complaint as Ledia Alva), J. Scott Long, Mark Sigler, Elena Bloodgood-Grandy, Andrea Steadman, Kevin Turner, Jenny Ratliff, and Joshua Ray.

As relevant here, the moving defendants all sought dismissal of the medical malpractice claim asserted against them, and the court granted that portion of their motions. The medical malpractice claim was dismissed as to several defendants (specifically, defendants Ackerman, Johnson, Whitehead, Williams, Avila, Ratliff, and Ray) on the grounds that they are not medical providers and, therefore, could not be liable for medical malpractice, a conclusion the plaintiffs did not contest and do not now contest. (*See* Doc. No. 67, at 33.) The claim was dismissed as to

---

[2] In addition to defendants employed by CoreCivic or TDOC, the plaintiff named as a defendant another inmate, Marcayus Rose, who allegedly sexually assaulted Addison Smith while he was incarcerated. Rose is the only defendant against whom the plaintiffs did not bring a medical malpractice claim.

CoreCivic, Mark Sigler, J. Scott Long, Angela Steadman, Kevin Turner, and Elena Bloodgood-Grandy solely on the basis that the plaintiffs had failed to comply with the presuit notice requirement set forth in the Tennessee Health Care Liability Act ("THCLA"), Tenn. Code Ann. § 29-26-121(a)(1). (*See* Doc. No. 67, at 39.) Having reached that conclusion, the court declined to reach the defendants' argument that dismissal was required based on the plaintiffs' failure to comply with the THCLA's requirement that they file a certificate of good faith with their Complaint, set forth in Tenn. Code Ann. § 29-26-122(a). (Doc. No. 67, at 36.)

In addition, although defendant William Lyons is or was a health care provider at the prison, the claim against him was technically not premised upon the provision of medical care in a negligent fashion—that is, in a fashion that fell below the applicable standard of care. Rather, it was premised upon the plaintiffs' allegation that "Lyons was supposed to provide mental health services related to the rape. He did not. After Addison died, . . . Lyons fabricat[ed] records to make it appear that he met with Addison after the rape." (Am. Compl., Doc. No. 16 ¶ 29.) The court dismissed the claims for negligence, gross, negligence, and wrongful death asserted against Lyons, finding that they "appear[ed] to be based solely on his failure to provide adequate health care for Addison, which is entirely encompassed by, and subject to, the THCLA." (Doc. No. 27, at 42.) As such, the various claims were subject to dismissal for the same reason that the medical malpractice claim against the other healthcare providers was dismissed—for failure to comply with the THCLA's presuit notice requirement. In addition, however, it was clear that, because, as alleged in the Amended Complaint, Lyons did not actually see or treat Addison (despite the fact that he was "supposed to" do so), he did not provide *any* care and therefore could not have provided negligent care. In other words, the court implicitly found that the Amended Complaint fails to allege sufficient facts to state any claim against Lyons for which any relief may be granted.

The plaintiffs have now brought a Motion for Reconsideration, superseded by their Amended Motion for Reconsideration, in which they ask the court to reconsider the dismissal of the medical malpractice claim against defendants CoreCivic, Mark Sigler, J. Scott Long, Angela Steadman, Kevin Turner, Elena Bloodgood-Grandy, and William Lyons. (Doc. No. 93.) The basis for their motion is the Sixth Circuit's opinion in *Albright v. Christensen*, 24 F.4th 1039 (6th Cir. 2022), issued after this court ruled on the defendants' Partial Motions to Dismiss. The CoreCivic defendants, which expressly includes only CoreCivic, Jason Whitehead, Christopher Williams, Joshua Ray, Jenny Ratcliff, Ledia Avila, and Angela Steadman, have filed a Response in Opposition to the Motion for Reconsideration.[3] (Doc. No. 96.) William Lyons, who is represented by separate counsel, filed his own Response and Amended Response in Opposition (Doc. Nos. 95, 97), the latter of which incorporates by reference the arguments raised in his original Response as well as those raised in the CoreCivic defendants' Response. The plaintiffs have filed a Reply. (Doc. No. 99.)[4]

## II.   STANDARD OF REVIEW

Under Rule 54, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action

---

[3] Although not actually identified as such, the court construes the CoreCivic defendants' Response as filed on behalf of defendants J. Scott Long, Mark Sigler, Elena Bloodgood-Grandy, and Kevin Turner as well, against whom claims asserted in the Complaint were terminated by the court's prior ruling.

[4] The plaintiffs assert in their Reply in support of the Motion for Reconsideration that they did not seek to amend their Complaint to allege additional facts establishing Lyons' medical negligence at the time the court found that the factual allegations in support of that claim were inadequate because, given the court's ruling on the application of the THCLA, any such amendment would have been futile. (Doc. No. 99, at 8.) They now assert that, if permitted to amend their pleading (and they have now filed a separate Motion to Amend Complaint), they will allege additional facts showing medical negligence, as well as simple negligence, on the part of Lyons. (*Id.* at 8–9.)

as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). The Sixth Circuit recognizes that "[d]istrict courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)); *see also Mallory*, 922 F.2d at 1282 ("A district court may modify, or even rescind, such interlocutory orders."); *In re Saffady*, 524 F.3d 799, 802–03 (6th Cir. 2008) (holding that a district court can vacate interlocutory orders prior to entry of final judgment, even *sua sponte*).

"Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 F. App'x at 959; *see also Adkisson v. Jacobs Eng'g Group, Inc.*, 527 F. Supp. 3d 961, 970 (E.D. Tenn. 2021) ("The moving party bears the burden of showing that reconsideration under Rule 54(b) is warranted, and that some harm or injustice would result if reconsideration were denied."), *aff'd on other grounds*, 35 F.4th 421 (6th Cir. 2022)). The plaintiffs here assert that there has been an intervening change in the law and that, consequently, failure to afford them relief will cause harm, since the medical malpractice claims made up "approximately half of [their] case." (Doc. No. 93, at 3 (quoting *Adkisson*, 527 F. Supp. 3d at 970).)

## III. DISCUSSION

The plaintiffs argue that reconsideration of the dismissal of their medical malpractice claim based on their failure to comply with the presuit notice requirement set forth in the THCLA is required by the Sixth Circuit's recent holding in *Albright v. Christensen*. There, the court held that requirements under Michigan state law that an affidavit-of-merit signed by a health care

professional be filed with a medical malpractice complaint and that presuit notice be provided to the defendant in a medical malpractice action did not apply to a diversity lawsuit filed in federal court. *Albright*, 24 F.4th at 1045–49. The plaintiffs argue that this holding applies with equal force to bar the application of Tennessee's very similar requirements to federal lawsuits.

The CoreCivic defendants argue that (1) *Albright* does not constitute an "intervening change in controlling law," because it concerned Michigan law rather than Tennessee law; (2) *Albright* does not affect the outcome in this case, because Tennessee's presuit notice statute, unlike Michigan's, is substantive rather than procedural, and state law claims brought under a federal district court's supplemental jurisdiction are governed by state substantive law; (3) *Albright* does not apply here, because that case arose under diversity jurisdiction rather than supplemental jurisdiction; (4) *Albright* concerned Michigan statutes that governed the "commencement" of a lawsuit and directly conflict with federal law, but the Tennessee presuit notice statute does not govern the commencement of a lawsuit and, therefore, does not directly conflict with Rule 3 of the Federal Rules of Civil Procedure (citing *Rajvongs v. Wright*, 432 S.W.3d 808, 812 (Tenn. 2013)); (5) *Albright*'s holding that the Michigan statute violated Rules 8(a), 9, 11, and 12 is inapplicable here, because the Tennessee statute has been construed to require only substantial, rather than strict, compliance; (6) this court's holding in *Hinton v. United States*, No. 3:20-cv-00633, 2022 WL 882157, at *2 (M.D. Tenn. Mar. 24, 2022) (Trauger, J.), has no bearing here, as that case involved a claim under the Federal Tort Claims Act over which the court had original jurisdiction, and the court considered the validity of a different provision of the THCLA—the requirement that a plaintiff file a certificate of good faith with a health care liability complaint—which was not the basis for the ruling in this case, and because other recent cases from this district weigh in favor of the defendants; and (7) the plaintiffs will not suffer manifest injustice if the court denies their

motion, because the claimed error is not "direct, obvious, and observable," *Tenn. Protection & Advocacy, Inc. v. Wells*, 371 F.3d 342, 348 (6th Cir. 2004).

The court attempts to address each of these arguments, but first will summarize *Albright*'s holding and the similarities between Tennessee's and Michigan's statutory schemes, before concluding that none of the defendants' arguments has merit.

### A.    *Albright v. Christensen*

In *Albright*, the plaintiff (an Ohio resident) brought a medical malpractice lawsuit against her doctor (a Michigan resident) and his practice in federal court, based on diversity jurisdiction. The defendants sought dismissal based on the plaintiff's failure to comply with two Michigan statutes governing medical malpractice actions. The first of these states, in relevant part:

> Except as otherwise provided in this section, a person shall not commence an action alleging medical malpractice against a health professional or health facility unless the person has given the health professional or health facility written notice under this section not less than 182 days before the action is commenced.

Mich. Comp. Laws. § 600.2912b(1) (emphasis added). The second statute requires the plaintiff bringing a medical malpractice lawsuit to "file with the complaint an affidavit of merit signed by a health professional who . . . meets the requirements for an expert witness." *Id.* § 600.2912d(1).

The district court found that the "affidavit-of-merit requirement" did not apply in federal court but that the presuit notice requirement did. *See Albright*, 24 F.4th at 1043 (citing *Albright v. Christensen*, 507 F. Supp. 3d 851 861, 863 (E.D. Mich. 2020)). It dismissed the case on that basis. The Sixth Circuit reversed, finding that neither requirement applied. Citing *Hanna v. Plumer*, 380 U.S. 460 (1965), and *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010) (Stevens, J., controlling opinion), among other cases, the court found that the state statutes conflicted with the Federal Rules of Civil Procedure and, therefore, did not apply in federal court. Regarding the affidavit of merit, the court reiterated and reaffirmed its prior holding in

*Gallivan v. United States*, 943 F.3d 291 (6th Cir. 2019), which addressed the "almost-identical

Ohio affidavit-of-merit requirement," stating:

> In *Gallivan*, we explained that Rules 8(a), 9, and 12(b)(6) [of the Federal Rules of Civil Procedure] do not require that plaintiffs file affidavits with their complaints in order to state a claim and held that these Federal Rules exclude other requirements that must be satisfied for a complaint to state a claim. . . . We reach the same conclusion in the present case. Our decision is bolstered by Rule 11, which states outright that "a pleading need not be verified or accompanied by an affidavit." Fed. R. Civ. P. 11(a). Because § 600.2912d collides with Rules 8(a), 9, 11, and 12(b)(6), we hold that Michigan's affidavit-of-merit requirement does not apply in federal court.

*Albright*, 24 F4th at 1046 (some internal citations omitted).

Regarding Michigan's presuit notice requirement, the court found that Rule 3, first, requires "only the filing of a complaint to commence an action—nothing more." *Id.* It found that the text of Rule 3, on its face, conflicted with Michigan's presuit notice statute. *See id.* (comparing Fed. R. Civ. P. 3 ("A civil action *is commenced* by filing a complaint with the court" (emphasis added by the Sixth Circuit)) and *id.* advisory committee's note to 1937 adoption ("[Rule 3] provides that the *first step in an action* is the filing of the complaint." (emphasis added by the Sixth Circuit)), with Mich. Comp. Laws § 600.2912b ("[A] person *shall not commence an action* alleging medical malpractice against a health professional or health facility unless the person has given the health professional or health facility written notice under this section not less than 182 days before the action is commenced." (emphasis added by the Sixth Circuit))).

The court expressly rejected the dissent's argument that presuit notice is merely a "prerequisite to the commencement of a medical malpractice suit and therefore does not conflict with Rule 3," noting that the Michigan Supreme Court had held that "for the purpose of determining how a civil action is commenced, the specific requirements of § 600.2912b(1) controlled over the more general terms of Mich. Comp. Laws § 600.1901, which is identical to Federal Rule 3." *Id.* (citing *Tyra v. Organ Procurement Agency of Mich.*, 869 N.W.2d 213, 226

(Mich. 2015)). Thus, the Sixth Circuit concluded, the "Michigan Supreme Court's interpretation of this provision underscores its conflict with Rule 3." *Id.*; *see also id.* at 1047 ("Because both Section 600.2912b and Rule 3 govern how a lawsuit is commenced, the two clearly conflict.").

The Sixth Circuit further found that, in addition to Rule 3, Rules 8(a), 9, 11, and 12 "are on point, too." *Id.* at 1047. In particular, the Michigan Supreme Court's statement that the "the failure to comply with the [presuit-notice] requirement renders the complaint insufficient to commence the action," *Burton v. Reed City Hosp. Corp.*, 691 N.W.2d 424, 429 (2005), reflected the state court's interpretation of § 600.2912b(1) "as a pleading requirement," *Albright*, 24 F.4th at 1047. The court also cited approvingly the Fourth Circuit's holding in *Pledger v. Lynch*, 5 F.4th 511, 520 (4th Cir. 2021), analyzing a West Virginia statute that the Sixth Circuit characterized as a "hybrid of the two Michigan provisions at issue" in *Albright*. *Albright*, 24 F.4th at 1047. That is, the West Virginia statute requires plaintiffs filing medical malpractice claims to "supply presuit notice to any defendant (analogous to § 600.2912b) that must include a certificate of merit (similar to § 600.2912d)." *Id.* at 1047–48. The Fourth Circuit nonetheless also found the statute to conflict with the Federal Rules of Civil Procedure. As the Sixth Circuit explained:

> That West Virginia requires the certificate of merit to be served before the complaint is filed did not, however, dissuade the Fourth Circuit. Citing *Gallivan*, the *Pledger* court held that Rules 8(a), 9, 11, and 12 answer the question of "whether a medical malpractice plaintiff must provide pre-suit expert support for his claim" and that West Virginia Code § 55-7B-6(b) thus does not apply in diversity cases. That the affidavit of merit was required to be served *before* the filing of the complaint, rather than filed *with* the complaint, did not change the fact that the affidavit-of-merit requirement acted as a heightened pleading standard.

*Id.* at 1048 (quoting *Pledger*, 5 F.4th at 519) (emphasis in original). The court concluded that "[t]he same reasoning applies to [Michigan's] pre-suit notice requirement," which by statute must state the factual basis for a claim, the applicable standard of care, the manner in which that standard was breached by the defendant, what action should have been taken to comply with the alleged standard

of care, and how the alleged breach was the proximate cause of the claimant's injury. *Id.* (citing Mich. Comp. Laws. § 600.2912b(4)). These requirements, however, "exceed those in Federal Rule 8(a)." *Id.* The court concluded:

> If Michigan law provided that its requirements be included in the complaint, rather than in the notice, that law would clearly not apply [in] federal court. The Fourth Circuit held in *Pledger* that serving an affidavit of merit before a complaint conflicted with federal pleading requirements. In this instance, too, the state cannot circumvent federal pleading requirements by requiring plaintiffs to serve documents before filing the complaint. Otherwise, the state could create any pleading requirement it chose and label it a notice requirement, and it would apply in federal court. Such a result is inconsistent with both [Supreme Court precedent] and the Federal Rules of Civil Procedure.

*Id.* As discussed further below, because the state statutes conflict with valid federal rules,[5] the court held that "Michigan's affidavit-of-merit and presuit-notice requirements in diversity cases do not apply in the federal courts." *Id.* at 1049.

### B. Comparing Michigan's Requirements with Tennessee's

As set forth above, Michigan's presuit notice requirement states in relevant part that "a person shall not commence an action alleging medical malpractice . . . unless the person has given the health professional or health facility written notice under this section." Mich. Comp. Laws. § 600.2912b(1). In addition, the plaintiff must file with the complaint an "affidavit of merit," signed by a "health profession who the plaintiff's attorney reasonably believes meets the requirements for an expert witness." Mich. Comp. Laws § 600.2912d(1). The health care professional must certify, in the affidavit of merit, that he or she has reviewed the presuit notice and the medical records "concerning the allegations contained in the notice," and the affidavit must state:

(a) The applicable standard of practice or care.

---

[5] The court also held, with little analysis, that the Federal Rules of Civil Procedure do not violate the Rules Enabling Act or the Constitution.

(b) The health professional's opinion that the applicable standard of practice or care was breached by the health professional or health facility receiving the notice.

(c) The actions that should have been taken or omitted by the health professional or health facility in order to have complied with the applicable standard of practice or care.

(d) The manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice.

Mich. Comp. Laws § 600.2912d(1).

While the Michigan statute states that a plaintiff must give presuit notice at least 182 days before even commencing an action, Tennessee's presuit notice statute requires that any person "asserting a potential claim for health care liability" provide "written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint." Tenn. Code Ann. § 29-26-121(a)(1). In addition, when a plaintiff alleging health care liability files a complaint, "the pleadings shall state whether each party has complied with subsection (a)." *Id.* § 29-26-121(b). This requirement may be excused "only for extraordinary cause shown." *Id.*

In a provision parallel to Michigan's affidavit-of-merit requirement, Tennessee requires a that a "certificate of good faith" be filed with the complaint in any health care liability action in which "expert testimony is required by [Tenn. Code Ann.] § 29-26-115"—that is, in virtually any health care liability action.[6] Tenn. Code Ann. § 29-26-112(a). The certificate of good faith must state that the plaintiff or his attorney has consulted with at least one expert who has provided a "signed written statement" confirming the expert's competence, under § 29-26-115, to express an

---

[6] Section 29-26-115 establishes that the plaintiff in a health care liability action has the burden of proving the "recognized standard of acceptable professional practice" in the defendant's profession and area of specialization, if any, in the community in which the professional practices; that the defendant failed to act in accordance with that standard, and that the plaintiff's injuries were proximately caused by the defendant's negligent act or omission. *Id.* § 29-26-115(a).

opinion and that the expert believes, based on the information available from the plaintiff's medical records, that there is a good faith basis for bringing the health care liability action or, alternatively, that there are material facts "that cannot be reasonably ascertained from the medical records or information reasonably available to the plaintiff or plaintiff's counsel; and that, despite the absence of this information, there is a good faith basis for maintaining the action as to each defendant consistent with the requirements of § 29-26-115." *Id.* Failure to file a certificate of good faith that satisfies these requirements renders the complaint subject to dismissal with prejudice. *Id.* § 29-26-122(c).

### C.    *Albright* Constitutes an Intervening Change in Controlling Law

The Ninth Circuit recently recognized that there is a "'growing consensus' among federal circuit courts" that requirements such as those codified in both Michigan and Tennessee law "do not govern actions in federal court, because they conflict with and are thus supplanted by the Federal Rules of Civil Procedure." *Martin v. Pierce Cty.*, 34 F.4th 1125, 1129–30 (9th Cir. 2022) (citing *Albright*, 24 F.4th at 1048–49; *Corley v. United States*, 11 F.4th 79 (2d Cir. 2021) (holding that Connecticut's statutory prerequisites to medical malpractice actions did not apply to medical malpractice action brought under the FTCA); *Pledger*, 5 F.4th at 518 (holding that West Virginia's pre-suit certification requirement did not govern actions in federal court because it conflicted with and was thus supplanted by Rules 8, 9, 11, and 12); *Gallivan*, 943 F.3d at 294 (holding that Ohio's certificate-of-merit requirement is incompatible with Rules 8, 9, and 12 of the Federal Rules of Civil Procedure and thus unenforceable in federal court); *Young v. United States*, 942 F.3d 349, 351 (7th Cir. 2019) (holding that a complaint could not be dismissed because it lacked an affidavit and report as required by Illinois law, because Illinois procedural rules were incompatible with Rule 8)).

The defendant's argument that *Albright* does not constitute an intervening change in controlling law is untenable. First, *Albright* is a published decision and, as such, binding and "controlling" precedent for this court. *See* 6th Cir. R. 32.1(b) ("Published panel opinions are binding on later panels. A published opinion is overruled only by the court *en banc.*"). The unpublished opinions to which the defendants cite cannot take precedence over *Albright*, a published decision. *Accord Keahey v. Marquis*, 978 F.3d 474, 480 (6th Cir. 2020). ("[T]he paper of unpublished decisions cannot escape the scissors of published decisions on point."). Moreover, as the plaintiffs point out, the issue of whether the THCLA was preempted by the Federal Rules of Civil Procedure was never raised by the plaintiffs in the two unpublished decisions on which the defendants seek to rely, as a result of which the issue was simply not addressed. *See Estate of Barnwell v. Grigsby*, 801 F. App'x 354 (6th Cir. 2020); *Riley v. Methodist Healthcare Memphis Hosp.*, 731 F. App'x 481 (6th Cir. 2018).

Second, the fact that *Albright* concerned Michigan law rather than Tennessee law does not make it less controlling. As set forth above, the differences between Michigan and Tennessee law are largely cosmetic, and the Sixth Circuit, by referencing and relying upon the Fourth Circuit's analysis of West Virginia law in *Pledger* made clear its willingness to extend the holding to analogous statutory schemes. Although the defendants claim that the Tennessee statutes, unlike the Michigan statutes, do not conflict with federal law because they do not affect the "commencement" of an action (Doc. No. 96, at 6), they are incorrect. As described above, one of the bases for *Albright*'s holding was that the Michigan statute conflicted with the federal rules governing pleadings by "requiring plaintiffs to serve documents before filing the complaint." *Albright*, 24 F.4th at 1048 (6th Cir. 2022). Insofar as the THCLA plainly requires the service of written notice in advance of suit, Tenn. Code Ann. § 29-26-121(a)(3), and the filing of an affidavit

in conjunction with the complaint, Tenn. Code Ann. § 29-26-122(a), it, like the Michigan law, conflicts with the Federal Rules of Civil Procedure.

### D.   The Defendants' Other Arguments

The defendants argue that *Albright* concerns conflicts between the Michigan statute and Federal Rules 8(a), 9, 11, and 12 that do not arise in the context of a complaint governed by the THCLA, because the presuit notice requirement of the THCLA is not subject to a strict compliance standard. *See Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC*, 433 S.W.3d 512, 520 (Tenn. 2014). This is a distinction without a difference, as the THCLA requirements remain *requirements*. *See Ellithorpe v. Weismark*, 479 S.W.3d 818, 829 (Tenn. 2015) (holding that the plaintiffs' failure to "provide a certificate of good faith under Tennessee Code Annotated section 29-26-122 . . . warrants dismissal *with* prejudice" (emphasis in original)).[7]

The defendants also assert that *Albright* is not controlling because the court there was exercising diversity jurisdiction rather than supplemental jurisdiction. This proposition is simply not supported by the law, as it is clear that the same standards apply in both contexts. *See, e.g.*, *Dillard v. Richmond*, 549 F. Supp. 3d 753, 758 (E.D. Tenn. 2021 (noting that it was "long settled [that] 'federal courts sitting in diversity apply state substantive law and federal procedural law,' and the same is true for federal courts with supplemental jurisdiction over state-law claims." (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 437, 130 (2010), and citing *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 744 (6th Cir. 1999))).

---

[7] Moreover, contrary to the defendants' suggestion, the statutes at issue in Michigan and West Virginia have also been construed as requiring substantial compliance rather than strict compliance. *See, e.g.*, *Boik v. Alpena Gen. Hosp.*, No. 258158, 2006 WL 744284, at *1 (Mich. Ct. App. Mar. 23, 2006); *Ericson v. Pollack*, 110 F. Supp. 2d 582, 587 (E.D. Mich. 2000); *Blankenship v. Ethicon, Inc.*, 656 S.E.2d 451, 459 (W. Va. 2007).

The defendants effectively acknowledge as much, because they also argue that "[s]tate law claims brought under a federal district court's jurisdiction are governed by state substantive law." (Doc. No. 96, at 4.) They assert that this is important, because it has long been held that the THCLA's presuit notice and certification requirements are "substantive" rather than merely procedural. (*Id.*) They argue that *Albright* cited Michigan caselaw for the proposition that the presuit notice requirements in effect under Michigan law are procedural rather than substantive. *See Albright*, 24 F.4th at 1046–47.

This argument fails for a number of reasons. First, as the plaintiffs argue, federal law, not state law, determines whether a state statute is substantive or procedural. *See, e.g.*, *Shropshire v. Laidlaw Transit, Inc.*, 550 F.3d 570, 573 (6th Cir. 2008) ("[T]his case requires us to determine whether this provision of Michigan law is substantive and therefore applicable in federal court, or procedural, in which case it is supplanted by Rule 56."). Second, the Tennessee Supreme Court has described the requirements as "procedural requirements for plaintiffs seeking to file medical malpractice actions." *Ellithorpe*, 479 S.W.3d at 825.

More importantly, the court in *Albright* did not conduct a classic *Erie* analysis based on whether the matter in question was substantive or procedural. Rather, it cited and relied upon *Hanna v. Plumer*, in which the Supreme Court rejected as incorrect the respondent's "assumption that the rule of *Erie R. Co. v. Tompkins* constitutes the appropriate test of the validity and therefore the applicability of a Federal Rule of Civil Procedure." *Hanna*, 380 U.S. at 469–70. Rather, as the Sixth Circuit explained in *Albright*, the threshold question was "whether state law conflicts with a valid federal rule of procedure on point." *Albright*, 24 F.4th at 1044. If a state law "collides with a federal rule," *id.*, the former must give way to the latter, so long as the application of the federal rule "represents a valid exercise" of the " rulemaking authority . . . bestowed on [the Supreme]

Court by the Rules Enabling Act." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 422 (2010) (Stevens, J., controlling opinion), *cited in Albright*, 24 F4th at 1044–45. If there is no direct conflict between state law and a federal rule, or if the federal rule violates the Rules Enabling Act or the constitution, then the courts must engage in the "relatively unguided *Erie* choice." *Id.* at 418 (quoting *Hanna*, 380 U.S. at 471).[8]

Following this framework, the court in *Albright* concluded that the state statutes at issue directly conflicted with the Federal Rules of Civil Procedure and that, because the Rules did not violate the U.S. Constitution or the Rules Enabling Act, they preempted the state laws. *Albright*, 24 F.4th at 1042. The court finds that the same analysis applies in this case to the substantively identical Tennessee rules, and that, under *Albright*, they are preempted by the Federal Rules.

The defendants' remaining arguments are equally unavailing. Regarding their assertion that Tennessee's presuit notice requirement does not govern the "commencement" of a lawsuit and, therefore, does not directly conflict with Rule 3 of the Federal Rules, the requirement is so similar to Michigan's that *Albright* is directly controlling on this question. Moreover, *Rajvongs v. Wright*, cited by the defendants, is not to the contrary, as it simply held that the filing of the complaint itself, rather than the presuit notice, commenced an action for purposes of the running of the statute of limitations. *Rajvongs*, 432 S.W.3d at 812.

---

[8] As *Hanna* further explained:

It is true that both the Enabling Act and the *Erie* rule say, roughly, that federal courts are to apply state 'substantive' law and federal 'procedural' law, but from that it need not follow that the tests are identical. For they were designed to control very different sorts of decisions. When a situation is covered by one of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided Erie Choice: the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions.

*Hanna*, 380 U.S. at 471.

The question of whether this court's holding in *Hinton v. United States*, No. 3:20-cv-00633, 2022 WL 882157, at \*2 (M.D. Tenn. Mar. 24, 2022) (Trauger, J.), has any bearing here is irrelevant in light of the fact that the court is now bound by the holding in *Albright*.

Finally, because the plaintiffs have demonstrated an intervening change of controlling law and that harm or injustice will result if relief is not granted, the court has no need to consider whether they have also demonstrated the "need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 F. App'x at 959.

## IV.  CONCLUSION

In sum, the court finds that the plaintiffs have established that *Albright* effected an intervening change in controlling law entitling them to reconsideration of the court's previous ruling. Under *Albright*, it is clear that the presuit notice requirement set forth in Tenn. Code Ann. § 29-26-121(a)(1) and the certificate of good faith requirement in Tenn. Code Ann. § 29-26-122(a) conflict with the Federal Rules of Civil Procedure. As such, they must give way to the Federal Rules and, therefore, do not apply to health care liability claims filed in federal court.

The court's prior ruling to the contrary will be vacated, and the plaintiffs' health care liability claims over which this court has supplemental jurisdiction will be reinstated. As the plaintiffs' recognize, this holding has no effect on the claims against defendant Lyons, regarding whom the court found that the original Complaint failed to state a medical negligence claim for which relief could be granted. The court is aware, however, that the plaintiffs seek to amend the pleading to allege additional facts to support a medical negligence and simple negligence claim against Lyons, which the court will address in the context of ruling on that motion.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge