**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JOHN SMITH, and SOYNIA SMITH, as survivors and next of kin of ADDISON SMITH, deceased,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Case No. 3:20-cv-00563** **Judge Aleta A. Trauger** |
| **CORECIVIC, INC. et al.,** | ) ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM AND ORDER</u>**

Before the court is the defendants' Motion to Strike (Doc. No. 147) paragraphs 39 through 50 of the plaintiffs' Second Amended Complaint ("SAC") (Doc. No. 140).

**I.     BACKGROUND**

In this lawsuit, the plaintiffs bring claims against defendant CoreCivic, Inc. ("CoreCivic"), the entity that operates a number of private prisons nationwide and in Tennessee, including South Central Correctional Center ("SCCC"), and several individual prison guards and medical providers employed at SCCC, arising from the rape (by another inmate) and subsequent suicide of the plaintiffs' son, Addison Smith, in August 2019, while he was incarcerated at SCCC. The SAC sets forth (1) claims against the individual defendants under 42 U.S.C. § 1983; (2) claims against all defendants, including CoreCivic, for wrongful death under Tennessee law; (3) medical malpractice claims against the medical provider defendants and CoreCivic; and (4) negligence and gross negligence claims against all defendants. The plaintiffs seek compensatory and punitive damages against all defendants.

Paragraph 39 of the SAC alleges that Addison Smith's suicide was "part of a pattern" engaged in by CoreCivic, in support of which the plaintiffs allege that CoreCivic has paid millions of dollars in settlements around the United States due to routinely understaffing its facilities and failing to provide adequate medical and mental health care to inmates. (SAC ¶ 39.) Paragraphs 40 through 48 of the SAC detail investigations of and lawsuits against CoreCivic, alleging inadequate staffing and medical care, unacceptable levels of violence, and failure to prevent suicide at other facilities around the country from 2011 through 2018. (SAC ¶¶ 40–48.) Paragraph 49 details some of the media coverage of incidents at CoreCivic prisons from 2016 through 2018, and Paragraph 50 asserts that the "foregoing incidents actually understate the problem[s]" at CoreCivic facilities, based on a 2020 audit by the Tennessee Comptroller finding major deficiencies at other Tennessee CoreCivic facilities, but apparently not mentioning SCCC. (SAC ¶ 50.)

The defendants move to strike these paragraphs based on Federal Rule of Civil Procedure 12, which permits the court to "strike from a pleading an insufficient defense and any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). The defendants maintain that the referenced paragraphs are immaterial and gratuitous, particularly because the court already dismissed the § 1983 claims against CoreCivic. The defendants assert that the allegations serve only to prejudice them by requiring them to respond to the allegations, potentially requiring them to respond to discovery requests related to the allegations, and prejudicing any jury who may hear the allegations. (Doc. No. 147, at 4–5.)

In response, the plaintiffs concede that these allegations are no longer relevant to their § 1983 claims, but they assert that the "bad acts" by CoreCivic alleged in paragraphs 39 through 50 are "very relevant" to their demand for punitive damages, particularly insofar as the plaintiffs allege that CoreCivic has a long history of "putting profits ahead of the health and safety of

inmates." (Doc. No. 149, at 2.) The plaintiffs posit that striking the allegations would be an "extreme" remedy and propose in the alternative that the court exclude the evidence later at a motion in limine if it is deemed too prejudicial. (*Id.* at 4.) In their Reply, the defendants counter that the referenced allegations are not relevant to punitive damages, because they do not relate to allegedly wrongful conduct giving rise to the injuries in *this case* and do not establish or give rise to an inference that the same shortcomings and deficiencies alleged in other cases can be found in this case.

## II.   LEGAL STANDARD

Motions to strike are governed by Rule 12(f), which states that a court, *sua sponte* or upon motion, "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Sixth Circuit has held that striking factual material from a pleading is a remedy to be used "sparingly by the courts" and, thus, only when the material to be stricken "has no possible relation to the controversy." *Parlak v. U.S. Immigr. & Customs Enf't*, No. 05-2003, 2006 WL 3634385 *1 (6th Cir. Apr. 27, 2006) (quoting *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)). "Indeed, 'federal courts are very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as best determined only after further development by way of discovery and a hearing on the merits.'" *ACT, Inc. v. Worldwide Interactive Network, Inc.*, 46 F.4th 489, 499 (6th Cir. 2022) (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1381 (3d ed. Apr. 2022 update)); *see also* 2 Moore's Federal Practice § 12.37, at 12-95 (3d ed.) (noting that motions to strike are generally disfavored and should be granted only when the movant "clearly show[s] that the challenged matter has no bearing on the subject matter of the litigation and that its inclusion will prejudice the defendants" (internal quotation marks and citation omitted)). "The function of the motion is to 'avoid the expenditure

of time and money that must arise from litigating spurious issues by dispensing with' them early in the case." *Operating Eng'rs Loc. 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (quoting *Kennedy v. City of Cleveland*, 797 F.2d 297, 305 (6th Cir. 1986)).

## III. DISCUSSION

The recovery of punitive damages on the plaintiffs' state tort claims is governed by a Tennessee statute providing that such damages may be awarded only "if the claimant proves by clear and convincing evidence that the defendant against whom punitive damages are sought acted maliciously, intentionally, fraudulently or recklessly." Tenn. Code. Ann. § 29-39-104(a)(1). Once a jury has found that a defendant is liable for punitive damages, in Tennessee, the factfinder then determines the amount of such liability by considering such factors as

(1) The defendant's financial affairs, financial condition, and net worth;

(2) The nature and reprehensibility of defendant's wrongdoing . . . ;

(3) The defendant's awareness of the amount of harm being caused and defendant's motivation in causing the harm;

(4) The duration of defendant's misconduct and whether defendant attempted to conceal the conduct;

(5) The expense plaintiff has borne in the attempt to recover the losses;

(6) Whether defendant profited from the activity, and if defendant did profit, whether the punitive award should be in excess of the profit in order to deter similar future behavior;

(7) Whether, and the extent to which, defendant has been subjected to previous punitive damage awards based upon the same wrongful act;

(8) Whether, once the misconduct became known to defendant, defendant took remedial action or attempted to make amends by offering a prompt and fair settlement for actual harm caused; and

(9) Any other circumstances shown by the evidence that bear on determining the proper amount of the punitive award.

*McLemore ex rel. McLemore v. Elizabethton Med. Invs., Ltd. P'ship*, 389 S.W.3d 764, 779–80 (Tenn. Ct. App. 2012) (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901–02 (Tenn. 1992)).

Based on these standards, the court cannot find that the material the defendants seek to strike has no possible relation to the controversy. With regard to punitive damages, these allegations go to the question of whether CoreCivic knowingly or recklessly failed to remedy a situation that carried a serious risk of harm to inmates. The court cannot say with certainty, at this juncture, that suits and investigations of CoreCivic around the country might not be relevant to that question.

With regard to prejudice, one of the reasons motions to strike are disfavored is because of the "limited importance of pleadings in federal practice." *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1182 (S.D. Cal. 2015). As a result, a pleading *per se* only rarely has the potential to prejudice a party. The defendants claim that having to respond to the allegations is prejudicial—but they have already answered the pleading, and simply being required to admit or deny factual allegations is not prejudicial. As for prejudice in being required to respond to discovery requests related to the allegations, the plaintiffs will be entitled to seek discovery of matters relevant to punitive damages, and the defendants remain at liberty to argue that any information sought by the plaintiffs is not discoverable under the Federal Rules of Civil Procedure. As for potentially predisposing a jury to be biased against CoreCivic, the court can cross that bridge when it gets to it. Generally, "[w]here the allegations cannot harm the defendants, under proper judicial supervision, they should be permitted to remain in the pleading." *Pessin v. Keeneland Ass'n*, 45 F.R.D. 10, 13 (E.D. Ky. 1968) (citation omitted).

**IV.     CONCLUSION AND ORDER**

For the reasons set forth herein, the defendants' Motion to Strike (Doc. No. 147) is

**DENIED**.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge